# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP406-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against William F. Mross , Attorney at Law: <br><br> Office of Lawyer Regulation, <br>       Complainant, <br>    v. <br>William F. Mross, <br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MROSS

| | |
|---|---|
| OPINION FILED: | May 17, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2012AP406-D

STATE OF WISCONSIN             :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against William F. Mross, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

   **v.**

**William F. Mross,**

      **Respondent.**

**FILED**

**MAY 17, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY   disciplinary   proceeding.   *Attorney's   license suspended.*

¶1    PER CURIAM.   We review the supplemental report and recommendation of the referee, Michael F. Dubis, finding that William F. Mross violated the Wisconsin Rules of Professional Conduct for Attorneys and recommending that Attorney Mross's license to practice law in Wisconsin be suspended for 60 days and that he be required to pay the costs of this proceeding.

¶2 Because no appeal has been filed, we review the referee's report pursuant to SCR 22.17(2).[1] After conducting an independent review of the matter, we adopt the referee's findings of fact and supplemental conclusions of law, and we agree with the referee's supplemental recommendation that Attorney Mross's license to practice law be suspended for a period of 60 days. We also agree that Attorney Mross should be required to pay the full costs of the proceeding, which were $5,973.98 as of December 17, 2012.

¶3 Attorney Mross was admitted to practice law in Wisconsin in 1975 and practices in Racine. He has been subject to professional discipline on four prior occasions. In 2003, his license was suspended for 90 days for violating SCR 20:8.4(b)[2] by delivering cigarettes to inmates at the Racine County jail, in violation of Wis. Stat. § 302.095(2). In re Disciplinary Proceedings Against Mross, 2003 WI 4, 259 Wis. 2d 8, 657 N.W.2d 342. In 2004, he was privately reprimanded for failing to competently represent, communicate

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

with, and keep informed clients in the defense of a foreclosure matter. Private Reprimand, No. 2004-11. In 2006, he was publicly reprimanded for failing to diligently represent, communicate with, and keep clients informed in foreclosure matters; and accepting compensation for representing those clients from a non-attorney offering debt relief, without the clients' consent. Public Reprimand of William F. Mross, No. 2006-10. In 2010, he was publicly reprimanded for practicing law while administratively suspended for noncompliance with continuing legal education (CLE) requirements and failing to disclose to the Board of Bar Examiners (BBE) or the Office of Lawyer Regulation (OLR) his practice activities while suspended, and for providing improper financial assistance to clients when he made a bankruptcy plan payment for them out of his own funds. Public Reprimand of William F. Mross, No. 2010-5.

¶4 The instant matter involves Attorney Mross's representation of two clients in foreclosure and bankruptcy proceedings. In September 2006 D.Y. and S.Y. retained Attorney Mross to represent them in a mortgage foreclosure action. D.Y. and S.Y. had been referred to Attorney Mross by Kent Arney, a paralegal, who solicits foreclosure defendants and offers them assistance in handling their foreclosure matters. In October of 2006, the Racine County circuit court granted a default judgment of foreclosure against D.Y. and S.Y.

¶5 In April of 2007, D.Y. and S.Y., represented by Attorney Mross, filed a Chapter 13 bankruptcy action in the

3

Eastern District of Wisconsin. On December 20, 2007, the bankruptcy court notified D.Y. and S.Y. and Attorney Mross of financial management course requirements that were a condition precedent to obtaining a discharge. On January 28, 2008, the bankruptcy trustee moved to convert the bankruptcy to a Chapter 7 proceeding. The bankruptcy court granted the trustee's motion to convert the matter to a Chapter 7 proceeding on February 5, 2008.

¶6 The meeting of creditors occurred on March 31, 2008. Since D.Y. and S.Y. were then in a Chapter 7 proceeding, they had approximately 60 days thereafter to file a certification with the bankruptcy court confirming that they successfully completed an approved financial management course.

¶7 Attorney Mross's license to practice law was suspended from May 27, 2008 until July 15, 2008, due to his failure to meet his CLE obligations.

¶8 As of May 31, 2008, D.Y. and S.Y. had met all requirements for bankruptcy discharge, except for filing the financial management course completion certification. D.Y. and S.Y. did not complete the course requirement, nor did Attorney Mross remind them to do so at any time before the May 30, 2008 course completion certification filing deadline.

¶9 On July 22, 2008, the bankruptcy court closed D.Y. and S.Y.'s case without discharge because the required certification of financial management course completion had not been filed. The closing notice was sent to both D.Y. and S.Y. and Attorney Mross. Upon receiving the case closing notice, D.Y. and S.Y.

4

enrolled in a financial management course, which they completed on August 17, 2008. D.Y. and S.Y. also contacted Attorney Mross and asked him to reopen their bankruptcy proceeding.

¶10 On October 1, 2008, Attorney Mross filed a motion in the Racine County foreclosure action seeking to cancel the sheriff's sale which had been scheduled after the non-discharge closure of the bankruptcy matter. On October 3, 2008, Attorney Mross sent D.Y. and S.Y. a bill for $500 for this work. On November 18, 2008, the circuit court vacated the foreclosure judgment and dismissed the action without prejudice.

¶11 Over the course of the next year, D.Y. and S.Y. contacted Attorney Mross periodically by e-mail to ask about reopening their bankruptcy. Each time, Attorney Mross gave a different excuse for why he had not filed a motion to reopen the case, and eventually told them not to communicate with him by e-mail because his computer was not working.

¶12 On November 20, 2009, S.Y. filed a grievance against Attorney Mross with the OLR.

¶13 On January 4, 2010, Attorney Mross moved to reopen D.Y. and S.Y.'s bankruptcy and filed documents, including D.Y. and S.Y.'s financial management course completion certificates. On February 17, 2010, the bankruptcy court reopened the case and accepted the course completion certifications. In granting the motion to reopen, the bankruptcy court commented that while D.Y. and S.Y. had acted promptly to take the course and obtain the completion certificate, it was only due to Attorney Mross's suspended license and his subsequent failure to act promptly

5

that 18 months had elapsed before the motion to reopen the bankruptcy case was filed. On February 18, 2010, the bankruptcy court entered an order granting D.Y. and S.Y. a discharge.

¶14 On February 27, 2012, the OLR filed a complaint alleging the following counts of misconduct with respect to Attorney Mross's handling of D.Y. and S.Y.'s bankruptcy case:

> [COUNT I:] By failing to ensure that his clients met all the requirements for discharge in their bankruptcy, and by failing for eighteen (18) months to seek the reopening of his clients' bankruptcy, Mross violated SCR 20:1.3.[3]

> [COUNT II:] By failing to keep his clients informed about the status of their bankruptcy and their requirements for discharge, Mross violated SCR 20:1.4(a)(3).[4]

¶15 The OLR's complaint also alleged that Attorney Mross engaged in professional misconduct with respect to his representation of L.B. and P.B. In 2008, L.B. and P.B. were experiencing debt management problems and in November 2008 their mortgage lender filed a foreclosure action against them in Rock County circuit court. Shortly after the foreclosure action was filed, L.B. and P.B. received a solicitation letter from paralegal Kent Arney offering "to discuss alternatives for a quick resolution." L.B. and P.B. called Arney and hired him over the phone and agreed to pay him $1,800. L.B. and P.B. paid $600 to Arney and they also paid a total of $1,200 to Attorney

---

[3] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of a matter; . . . ."

Mross. L.B. and P.B. gave Arney the information and documentation needed to file a Chapter 13 bankruptcy petition. They never directly hired Attorney Mross. Instead, Arney told L.B. and P.B. that Attorney Mross would be helping him with the case. There was no written fee agreement between Attorney Mross and L.B. and P.B.

¶16 Attorney Mross filed an answer in the foreclosure case on L.B. and P.B.'s behalf on March 9, 2009. L.B. and P.B. had not met with Attorney Mross prior to this time. On June 16, 2009, the lender moved for judgment in the foreclosure action, which the circuit court granted on July 17, 2009. The judgment provided for a six-month redemption period. During the redemption period the debtor is entitled to pay off the amount due and keep the home. Once the redemption period is over, a sheriff's sale of the property occurs.

¶17 Attorney Mross had little, if any, contact with L.B. and P.B. during the redemption period. A sheriff's sale of L.B. and P.B.'s residence occurred, and the report of the sheriff's sale was filed on January 21, 2010.

¶18 On January 19, 2010, Attorney Mross filed a Chapter 13 bankruptcy action on behalf of L.B. and P.B. Later that day the clerk of the bankruptcy court notified Attorney Mross that he had failed to file numerous required documents with L.B. and P.B.'s bankruptcy petition. The notice indicated the deadline to submit the missing documents was February 2, 2010. Attorney Mross failed to file the missing documents by that date. On February 3, 2010, the bankruptcy trustee moved to dismiss L.B.

7

and P.B.'s bankruptcy petition for failure to file the missing documents. On February 24, 2010, Attorney Mross moved to convert L.B. and P.B.'s bankruptcy to a Chapter 7 proceeding. The bankruptcy court granted the conversion on February 25, 2010.

¶19 The conversion to a Chapter 7 proceeding moved the deadline for filing the required documentation to April 10, 2010, and moved the meeting of creditors to April 20, 2010. Attorney Mross filed some but not all of the required documents, which were received by the bankruptcy court on April 19, 2010. The creditors' meeting was rescheduled to May 17, 2010. Attorney Mross had no contact with L.B. and P.B. between January 29, 2010 and his filing of the incomplete information on April 19, 2010.

¶20 On May 14, 2010, the bankruptcy trustee moved to dismiss L.B. and P.B.'s bankruptcy for failure to file certain documents. On May 17, 2010, Attorney Mross and L.B. and P.B. appeared for the meeting of creditors. At the meeting, L.B. and P.B. testified that Attorney Mross had not requested the relevant documents from L.B. and P.B. The meeting of creditors was therefore continued to June 1, 2010.

¶21 Immediately after the May 17, 2010 meeting of creditors, Attorney Mross requested that L.B. and P.B. pay him the second and final $600 installment payment toward his $1,200 fee, and L.B. and P.B. did so. On May 25, 2010, Attorney Mross sent L.B. and P.B. documents from the foreclosure action indicating that the creditor had moved the bankruptcy court for

relief from the automatic stay. The bankruptcy trustee initially objected to the creditor's request but later withdrew the objection. On May 4, 2010, the bankruptcy court relieved the creditor from the stay. Attorney Mross did not file any documents with the bankruptcy court between the May 17, 2010 meeting of creditors and the June 1, 2010 continued meeting.

¶22 At the continued meeting of creditors on June 1, 2010, L.B. and P.B. appeared and filed the missing documents. Attorney Mross did not appear at the continued meeting and advised the trustee's office by telephone that he had not appeared due to a scheduling conflict.

¶23 On June 4, 2010, the bankruptcy trustee withdrew the motion to dismiss, noting that L.B. and P.B. had filed the required documentation with the bankruptcy court. On June 7, 2010, Attorney Mross filed an objection to the motion to dismiss. By this time L.B. and P.B. had already submitted the requested documentation and the trustee had withdrawn the motion to dismiss. On June 8, 2010, Attorney Mross filed what he labeled an "Amended" attorney fee disclosure, although no prior attorney fee disclosure had been filed.

¶24 The bankruptcy court granted a discharge to L.B. and P.B. on July 8, 2010. Based on L.B. and P.B.'s statements at the June 1, 2010 continued meeting of creditors and the attorney fee disclosure Attorney Mross filed on June 8, 2010, the trustee moved the court for an order to examine Attorney Mross's fees and require him to turn over any excess fees to L.B. and P.B. In the motion the trustee noted that Attorney Mross failed to

file required documentation and twice put his clients in jeopardy of dismissal and forced the trustee to continue the meeting of creditors twice. The motion also noted Attorney Mross failed to appear at the second continued meeting of creditors.

¶25 In a July 28, 2010 conference call with L.B. and P.B., Attorney Mross, and the trustee, Attorney Mross agreed to refund L.B. and P.B. the entire $1,200 they had paid him. L.B. and P.B. received the refund on July 29, 2010. On August 2, 2010, Attorney Mross filed a motion with the bankruptcy court to withdraw as counsel for L.B. and P.B. The trustee withdrew the motion for fee examination on August 11, 2010.

¶26 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Mross's representation of L.B. and P.B.:

> [COUNT III:] By failing to timely file the necessary documentation required for his clients' bankruptcy and by failing to appear for the final creditors' meeting, Mross violated SCR 20:1.3.

> [COUNT IV:] By failing to consult with his clients about the objectives of the representation, Mross violated SCR 20:1.4(a)(2).

> [COUNT V:] By failing to communicate with his clients and inform them about the status of their bankruptcy, Mross violated SCR 20:1.4(a)(3).

> [COUNT VI:] By failing to provide his clients a written fee agreement setting forth the scope of the representation and the basis or rate of the $1.200 fee they paid to him, Mross violated SCR 20:1.5(b)(1).[5]

---

[5] SCR 20:1.5(b)(1) provides:

¶27 A hearing was held before the referee on November 6, 2012. On November 28, 2012, the referee filed his report and recommendation. The referee filed a supplemental report and recommendation on February 21, 2013. The referee found in favor of the OLR on Counts I, III, and VI. He found in favor of Attorney Mross on Count II, IV, and V.

¶28 As to Count II, the referee said the practice in the bankruptcy court is that notices are sent to both the attorney and the debtors. The referee reasoned D.Y. and S.Y. were aware of their obligation to file a financial management course completion certificate and for that reason Attorney Mross should not be liable for failing to inform D.Y. and S.Y. of something they were already aware of.

¶29 As to Count IV, the referee said although the record was clear that Attorney Mross failed to act with reasonable diligence and promptness, the record failed to show that he did not consult with L.B. and P.B. about the objectives of his representation. The referee said the fact Attorney Mross had

---

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, except before or within a reasonable time after commencing the representation when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of the representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

11

little or no contact with L.B. and P.B. during certain time periods did not equate to a failure to consult with them about the objectives of the representation. The referee said from the record it appeared L.B. and P.B. and Attorney Mross were always aware of the objectives sought but that Attorney Mross failed to act with reasonable diligence in accomplishing those objectives. With respect to Count V, the referee found Attorney Mross did communicate with and inform L.B. and P.B. about their case but that he failed to carry out the planned objectives.

¶30 With respect to the appropriate level of discipline, the referee recommended a 60-day suspension of Attorney Mross's license to practice law. The referee noted that the OLR requested a 90-day suspension. In concluding that a 60-day suspension is more appropriate, the referee pointed out that Attorney Mross refunded to L.B. and P.B. the $1,200 they had paid him. The referee also noted Attorney Mross has consented to no longer taking referral bankruptcies from Arney. The referee also noted that he found in favor of Attorney Mross on three out of the original six counts alleged in the OLR's complaint. The referee also noted that Attorney Mross's behavior at the evidentiary hearing was not combative or antagonistic toward his former clients, counsel for the OLR, or the referee. The referee also recommended that Attorney Mross pay the full costs of the proceeding.

¶31 When reviewing a referee's report and recommendation, we will affirm the referee's findings of fact unless they are clearly erroneous. See In re Disciplinary Proceedings Against

12

<u>Inglimo</u>, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The referee's conclusions of law are subject to de novo review. <u>Id.</u> We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefitting from it. <u>See</u> <u>In re Disciplinary Proceedings Against Widule</u>, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686. After independently reviewing the matter, we conclude that the findings of fact contained in the referee's supplemental report are not clearly erroneous, and we adopt them. We also agree that the referee's supplemental conclusions of law regarding Attorney Mross's misconduct are correct, and we concur with the referee that a 60-day suspension of Attorney Mross's license to practice law is appropriate. We also agree that Attorney Mross should be required to pay the full costs of this disciplinary proceeding.

¶32 IT IS ORDERED that the license of William F. Mross to practice law in Wisconsin is suspended for a period of 60 days, effective June 14, 2013.

¶33 IT IS FURTHER ORDERED that William F. Mross shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶34 IT IS FURTHER ORDERED that within 60 days of the date of this order, William F. Mross shall pay to the Office of Lawyer Regulation, the costs of this proceeding, which are $5,973.98.

13

¶35 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

2013 WI 44

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP406-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against William F. Mross, Attorney at Law:

Office of Lawyer Regulation,

      Complainant,

    v.

William F. Mross,

      Respondent.

**FILED**

**MAY 17, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶36 PER CURIAM. We review the supplemental report and recommendation of the referee, Michael F. Dubis, finding that William F. Mross violated the Wisconsin Rules of Professional Conduct for Attorneys and recommending that Attorney Mross's license to practice law in Wisconsin be suspended for 60 days and that he be required to pay the costs of this proceeding.

¶37 Because no appeal has been filed, we review the referee's report pursuant to SCR 22.17(2).[1] After conducting an independent review of the matter, we adopt the referee's findings of fact and supplemental conclusions of law, and we agree with the referee's supplemental recommendation that Attorney Mross's license to practice law be suspended for a period of 60 days. We also agree that Attorney Mross should be required to pay the full costs of the proceeding, which were $5,973.98 as of December 17, 2012.

¶38 Attorney Mross was admitted to practice law in Wisconsin in 1975 and practices in Racine. He has been subject to professional discipline on four prior occasions. In 2003, his license was suspended for 90 days for violating SCR 20:8.4(b)[2] by delivering cigarettes to inmates at the Racine County jail, in violation of Wis. Stat. § 302.095(2). In re Disciplinary Proceedings Against Mross, 2003 WI 4, 259 Wis. 2d 8, 657 N.W.2d 342. In 2004, he was privately reprimanded for failing to competently represent, communicate

---

[1] SCR 22.17(2) states:

    If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

[2] SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

with, and keep informed clients in the defense of a foreclosure matter. Private Reprimand, No. 2004-11. In 2006, he was publicly reprimanded for failing to diligently represent, communicate with, and keep clients informed in foreclosure matters; and accepting compensation for representing those clients from a non-attorney offering debt relief, without the clients' consent. Public Reprimand of William F. Mross, No. 2006-10. In 2010, he was publicly reprimanded for practicing law while administratively suspended for noncompliance with continuing legal education (CLE) requirements and failing to disclose to the Board of Bar Examiners (BBE) or the Office of Lawyer Regulation (OLR) his practice activities while suspended, and for providing improper financial assistance to clients when he made a bankruptcy plan payment for them out of his own funds. Public Reprimand of William F. Mross, No. 2010-5.

¶39 The instant matter involves Attorney Mross's representation of two clients in foreclosure and bankruptcy proceedings. In September 2006 D.Y. and S.Y. retained Attorney Mross to represent them in a mortgage foreclosure action. D.Y. and S.Y. had been referred to Attorney Mross by Kent Arney, a paralegal, who solicits foreclosure defendants and offers them assistance in handling their foreclosure matters. In October of 2006, the Racine County circuit court granted a default judgment of foreclosure against D.Y. and S.Y.

¶40 In April of 2007, D.Y. and S.Y., represented by Attorney Mross, filed a Chapter 13 bankruptcy action in the

3

Eastern District of Wisconsin. On December 20, 2007, the bankruptcy court notified D.Y. and S.Y. and Attorney Mross of financial management course requirements that were a condition precedent to obtaining a discharge. On January 28, 2008, the bankruptcy trustee moved to convert the bankruptcy to a Chapter 7 proceeding. The bankruptcy court granted the trustee's motion to convert the matter to a Chapter 7 proceeding on February 5, 2008.

¶41 The meeting of creditors occurred on March 31, 2008. Since D.Y. and S.Y. were then in a Chapter 7 proceeding, they had approximately 60 days thereafter to file a certification with the bankruptcy court confirming that they successfully completed an approved financial management course.

¶42 Attorney Mross's license to practice law was suspended from May 27, 2008 until July 15, 2008, due to his failure to meet his CLE obligations.

¶43 As of May 31, 2008, D.Y. and S.Y. had met all requirements for bankruptcy discharge, except for filing the financial management course completion certification. D.Y. and S.Y. did not complete the course requirement, nor did Attorney Mross remind them to do so at any time before the May 30, 2008 course completion certification filing deadline.

¶44 On July 22, 2008, the bankruptcy court closed D.Y. and S.Y.'s case without discharge because the required certification of financial management course completion had not been filed. The closing notice was sent to both D.Y. and S.Y. and Attorney Mross. Upon receiving the case closing notice, D.Y. and S.Y.

4

enrolled in a financial management course, which they completed on August 17, 2008. D.Y. and S.Y. also contacted Attorney Mross and asked him to reopen their bankruptcy proceeding.

¶45 On October 1, 2008, Attorney Mross filed a motion in the Racine County foreclosure action seeking to cancel the sheriff's sale which had been scheduled after the non-discharge closure of the bankruptcy matter. On October 3, 2008, Attorney Mross sent D.Y. and S.Y. a bill for $500 for this work. On November 18, 2008, the circuit court vacated the foreclosure judgment and dismissed the action without prejudice.

¶46 Over the course of the next year, D.Y. and S.Y. contacted Attorney Mross periodically by e-mail to ask about reopening their bankruptcy. Each time, Attorney Mross gave a different excuse for why he had not filed a motion to reopen the case, and eventually told them not to communicate with him by e-mail because his computer was not working.

¶47 On November 20, 2009, S.Y. filed a grievance against Attorney Mross with the OLR.

¶48 On January 4, 2010, Attorney Mross moved to reopen D.Y. and S.Y.'s bankruptcy and filed documents, including D.Y. and S.Y.'s financial management course completion certificates. On February 17, 2010, the bankruptcy court reopened the case and accepted the course completion certifications. In granting the motion to reopen, the bankruptcy court commented that while D.Y. and S.Y. had acted promptly to take the course and obtain the completion certificate, it was only due to Attorney Mross's suspended license and his subsequent failure to act promptly

5

that 18 months had elapsed before the motion to reopen the bankruptcy case was filed. On February 18, 2010, the bankruptcy court entered an order granting D.Y. and S.Y. a discharge.

¶49 On February 27, 2012, the OLR filed a complaint alleging the following counts of misconduct with respect to Attorney Mross's handling of D.Y. and S.Y.'s bankruptcy case:

> [COUNT I:] By failing to ensure that his clients met all the requirements for discharge in their bankruptcy, and by failing for eighteen (18) months to seek the reopening of his clients' bankruptcy, Mross violated SCR 20:1.3.[3]

> [COUNT II:] By failing to keep his clients informed about the status of their bankruptcy and their requirements for discharge, Mross violated SCR 20:1.4(a)(3).[4]

¶50 The OLR's complaint also alleged that Attorney Mross engaged in professional misconduct with respect to his representation of L.B. and P.B. In 2008, L.B. and P.B. were experiencing debt management problems and in November 2008 their mortgage lender filed a foreclosure action against them in Rock County circuit court. Shortly after the foreclosure action was filed, L.B. and P.B. received a solicitation letter from paralegal Kent Arney offering "to discuss alternatives for a quick resolution." L.B. and P.B. called Arney and hired him over the phone and agreed to pay him $1,800. L.B. and P.B. paid $600 to Arney and they also paid a total of $1,200 to Attorney

---

[3] SCR 20:1.3 states "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of a matter; . . . ."

Mross.  L.B. and P.B. gave Arney the information and documentation needed to file a Chapter 13 bankruptcy petition. They never directly hired Attorney Mross.  Instead, Arney told L.B. and P.B. that Attorney Mross would be helping him with the case.  There was no written fee agreement between Attorney Mross and L.B. and P.B.

¶51  Attorney Mross filed an answer in the foreclosure case on L.B. and P.B.'s behalf on March 9, 2009.  L.B. and P.B. had not met with Attorney Mross prior to this time.  On June 16, 2009, the lender moved for judgment in the foreclosure action, which the circuit court granted on July 17, 2009.  The judgment provided for a six-month redemption period.  During the redemption period the debtor is entitled to pay off the amount due and keep the home.  Once the redemption period is over, a sheriff's sale of the property occurs.

¶52  Attorney Mross had little, if any, contact with L.B. and P.B. during the redemption period.  A sheriff's sale of L.B. and P.B.'s residence occurred, and the report of the sheriff's sale was filed on January 21, 2010.

¶53  On January 19, 2010, Attorney Mross filed a Chapter 13 bankruptcy action on behalf of L.B. and P.B.  Later that day the clerk of the bankruptcy court notified Attorney Mross that he had failed to file numerous required documents with L.B. and P.B.'s bankruptcy petition.  The notice indicated the deadline to submit the missing documents was February 2, 2010.  Attorney Mross failed to file the missing documents by that date.  On February 3, 2010, the bankruptcy trustee moved to dismiss L.B.

and P.B.'s bankruptcy petition for failure to file the missing documents. On February 24, 2010, Attorney Mross moved to convert L.B. and P.B.'s bankruptcy to a Chapter 7 proceeding. The bankruptcy court granted the conversion on February 25, 2010.

¶54 The conversion to a Chapter 7 proceeding moved the deadline for filing the required documentation to April 10, 2010, and moved the meeting of creditors to April 20, 2010. Attorney Mross filed some but not all of the required documents, which were received by the bankruptcy court on April 19, 2010. The creditors' meeting was rescheduled to May 17, 2010. Attorney Mross had no contact with L.B. and P.B. between January 29, 2010 and his filing of the incomplete information on April 19, 2010.

¶55 On May 14, 2010, the bankruptcy trustee moved to dismiss L.B. and P.B.'s bankruptcy for failure to file certain documents. On May 17, 2010, Attorney Mross and L.B. and P.B. appeared for the meeting of creditors. At the meeting, L.B. and P.B. testified that Attorney Mross had not requested the relevant documents from L.B. and P.B. The meeting of creditors was therefore continued to June 1, 2010.

¶56 Immediately after the May 17, 2010 meeting of creditors, Attorney Mross requested that L.B. and P.B. pay him the second and final $600 installment payment toward his $1,200 fee, and L.B. and P.B. did so. On May 25, 2010, Attorney Mross sent L.B. and P.B. documents from the foreclosure action indicating that the creditor had moved the bankruptcy court for

relief from the automatic stay. The bankruptcy trustee initially objected to the creditor's request but later withdrew the objection. On May 4, 2010, the bankruptcy court relieved the creditor from the stay. Attorney Mross did not file any documents with the bankruptcy court between the May 17, 2010 meeting of creditors and the June 1, 2010 continued meeting.

¶57 At the continued meeting of creditors on June 1, 2010, L.B. and P.B. appeared and filed the missing documents. Attorney Mross did not appear at the continued meeting and advised the trustee's office by telephone that he had not appeared due to a scheduling conflict.

¶58 On June 4, 2010, the bankruptcy trustee withdrew the motion to dismiss, noting that L.B. and P.B. had filed the required documentation with the bankruptcy court. On June 7, 2010, Attorney Mross filed an objection to the motion to dismiss. By this time L.B. and P.B. had already submitted the requested documentation and the trustee had withdrawn the motion to dismiss. On June 8, 2010, Attorney Mross filed what he labeled an "Amended" attorney fee disclosure, although no prior attorney fee disclosure had been filed.

¶59 The bankruptcy court granted a discharge to L.B. and P.B. on July 8, 2010. Based on L.B. and P.B.'s statements at the June 1, 2010 continued meeting of creditors and the attorney fee disclosure Attorney Mross filed on June 8, 2010, the trustee moved the court for an order to examine Attorney Mross's fees and require him to turn over any excess fees to L.B. and P.B. In the motion the trustee noted that Attorney Mross failed to

file required documentation and twice put his clients in jeopardy of dismissal and forced the trustee to continue the meeting of creditors twice. The motion also noted Attorney Mross failed to appear at the second continued meeting of creditors.

¶60 In a July 28, 2010 conference call with L.B. and P.B., Attorney Mross, and the trustee, Attorney Mross agreed to refund L.B. and P.B. the entire $1,200 they had paid him. L.B. and P.B. received the refund on July 29, 2010. On August 2, 2010, Attorney Mross filed a motion with the bankruptcy court to withdraw as counsel for L.B. and P.B. The trustee withdrew the motion for fee examination on August 11, 2010.

¶61 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Mross's representation of L.B. and P.B.:

> [COUNT III:] By failing to timely file the necessary documentation required for his clients' bankruptcy and by failing to appear for the final creditors' meeting, Mross violated SCR 20:1.3.

> [COUNT IV:] By failing to consult with his clients about the objectives of the representation, Mross violated SCR 20:1.4(a)(2).

> [COUNT V:] By failing to communicate with his clients and inform them about the status of their bankruptcy, Mross violated SCR 20:1.4(a)(3).

> [COUNT VI:] By failing to provide his clients a written fee agreement setting forth the scope of the representation and the basis or rate of the $1.200 fee they paid to him, Mross violated SCR 20:1.5(b)(1).[5]

---

[5] SCR 20:1.5(b)(1) provides:

¶62 A hearing was held before the referee on November 6, 2012. On November 28, 2012, the referee filed his report and recommendation. The referee filed a supplemental report and recommendation on February 21, 2013. The referee found in favor of the OLR on Counts I, III, and VI. He found in favor of Attorney Mross on Count II, IV, and V.

¶63 As to Count II, the referee said the practice in the bankruptcy court is that notices are sent to both the attorney and the debtors. The referee reasoned D.Y. and S.Y. were aware of their obligation to file a financial management course completion certificate and for that reason Attorney Mross should not be liable for failing to inform D.Y. and S.Y. of something they were already aware of.

¶64 As to Count IV, the referee said although the record was clear that Attorney Mross failed to act with reasonable diligence and promptness, the record failed to show that he did not consult with L.B. and P.B. about the objectives of his representation. The referee said the fact Attorney Mross had

---

The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, except before or within a reasonable time after commencing the representation when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of the representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

11

little or no contact with L.B. and P.B. during certain time periods did not equate to a failure to consult with them about the objectives of the representation. The referee said from the record it appeared L.B. and P.B. and Attorney Mross were always aware of the objectives sought but that Attorney Mross failed to act with reasonable diligence in accomplishing those objectives. With respect to Count V, the referee found Attorney Mross did communicate with and inform L.B. and P.B. about their case but that he failed to carry out the planned objectives.

¶65 With respect to the appropriate level of discipline, the referee recommended a 60-day suspension of Attorney Mross's license to practice law. The referee noted that the OLR requested a 90-day suspension. In concluding that a 60-day suspension is more appropriate, the referee pointed out that Attorney Mross refunded to L.B. and P.B. the $1,200 they had paid him. The referee also noted Attorney Mross has consented to no longer taking referral bankruptcies from Arney. The referee also noted that he found in favor of Attorney Mross on three out of the original six counts alleged in the OLR's complaint. The referee also noted that Attorney Mross's behavior at the evidentiary hearing was not combative or antagonistic toward his former clients, counsel for the OLR, or the referee. The referee also recommended that Attorney Mross pay the full costs of the proceeding.

¶66 When reviewing a referee's report and recommendation, we will affirm the referee's findings of fact unless they are clearly erroneous. See In re Disciplinary Proceedings Against

*Inglimo*, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. The referee's conclusions of law are subject to de novo review. Id. We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefitting from it. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686. After independently reviewing the matter, we conclude that the findings of fact contained in the referee's supplemental report are not clearly erroneous, and we adopt them. We also agree that the referee's supplemental conclusions of law regarding Attorney Mross's misconduct are correct, and we concur with the referee that a 60-day suspension of Attorney Mross's license to practice law is appropriate. We also agree that Attorney Mross should be required to pay the full costs of this disciplinary proceeding.

¶67 IT IS ORDERED that the license of William F. Mross to practice law in Wisconsin is suspended for a period of 60 days, effective June 14, 2013.

¶68 IT IS FURTHER ORDERED that William F. Mross shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶69 IT IS FURTHER ORDERED that within 60 days of the date of this order, William F. Mross shall pay to the Office of Lawyer Regulation, the costs of this proceeding, which are $5,973.98.

¶70 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).